UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 15-3820(DSD/TNL)

Hollie Jacobs,

      Plaintiff,

v.                                                   **ORDER**

Gradient Insurance Brokerage, Inc.
dba Gradient Annuity Brokerage and
Gradient Life Brokerage, and
Gradient Financial Group, LLC,

      Defendants.

    Matthew H. Morgan, Esq. and Nichols Kaster, PLLP, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402, counsel for plaintiff.

    Michael C. Wilhelm, Esq. and Briggs & Morgan, PA, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motion to dismiss defendants' counterclaims by plaintiff Hollie Jacobs. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted in part.

**BACKGROUND**

This employment dispute arises from Jacobs' tenure as vice president of marketing with defendants Gradient Insurance Brokerage, Inc. and Gradient Financial Group, LLC (Gradient). Jacobs resigned her position on August 3, 2015, and allegedly began working for a competitor. At the start of her employment with

Gradient, Jacobs signed a non-solicitation agreement, a confidentiality agreement, and an employment agreement. Answer and Counterclaims Exs. 1-3. The non-solicitation agreement prohibits Jacobs, during the two-year period following her termination, from directly or indirectly (1) soliciting Gradient customers, (2) recruiting Gradient employees to join her new employer, and (3) disclosing the identity of her new employer to existing Gradient customers. Id. Ex. 1. In the confidentiality agreement, Jacobs agreed that she would indefinitely refrain from sharing Gradient's confidential and proprietary information with third parties following her termination. Id. Ex. 2. The employment agreement likewise prohibits Jacobs from, among other things, soliciting Gradient customers, competing with Gradient, and disclosing confidential and proprietary information to third parties. Id. Ex. 3, ¶¶ 6-8. The employment agreement also obligates Jacobs to return materials containing confidential information or trade secrets and any other property or information belonging to Gradient. Id. ¶¶ 6(c), 12.

On October 18, 2015, Jacob's filed a putative class action complaint alleging that Gradient violated the Fair Labor Standards Act (FLSA) by failing to pay her and other non-exempt employees for overtime hours worked. Gradient responded by bringing counterclaims against Jacobs for breach of contract, misappropriation of trade secrets, and conversion. Jacobs now

moves to dismiss the misappropriation and conversion counterclaims.[1]

**DISCUSSION**

**I.   Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings

---

[1] Jacobs has withdrawn her motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). ECF No. 31. As a result, the court does not address the facts of that motion or the details relating to the parallel state-court proceeding which prompted the motion.

under Rule 12(b)(6).  Fed. R. Civ. P. 12(d).  The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted).  Here, the non-solicitation, confidentiality, and employment agreements are embraced by pleadings and properly before the court.

**II. Misappropriation of Trade Secrets**

To prove that Jacobs violated the Minnesota Uniform Trade Secrets Act (MUTSA), Gradient must show the existence of a trade secret and Jacobs' improper acquisition, disclosure, or use of the trade secret.  See Minn. Stat. § 325C.01 subdiv. 3; Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 897 (Minn. 1983). A trade secret is information that must (1) not be generally known or readily ascertainable, (2) derive independent economic value from its secrecy and (3) be the subject of reasonable efforts to maintain its secrecy.  See Minn. Stat. § 325C.01 subdiv. 5; Electro-Craft Corp., 332 N.W.2d at 899.

Gradient has adequately pleaded its misappropriation of trade secrets claim.  Gradient alleges that Jacobs' employment with Gradient gave her access to confidential and proprietary information relating to Gradient's operations, including "strategies, business processes, business plans, customer lists, customer information, contact management systems, databases, [and]

4

financial information." Answer and Counterclaim ¶ 33. The confidentiality agreement expressly states that this information is confidential or proprietary, and Jacobs agreed not to disclose the information. Id. Ex. 2. The employment agreement likewise catalogs the confidential information Jacobs had access to as an employee and is prohibited from disclosing. Id. Ex. 3, ¶¶ 1(c), 6. Gradient also alleges in detail its efforts to maintain the secrecy of its confidential information, that the information was not readily ascertainable or generally known, and that it has economic value because of its secrecy. Id. ¶¶ 22-27. Gradient provides a detailed list of the documents containing confidential information that Jacobs e-mailed to her personal account and has not returned to Gradient. Id. ¶¶ 62-65, 68-74. Although not as robust as the other allegations, Gradient does allege that Jacobs is using the information to compete with Gradient. Id. ¶¶ 75-79. At this stage of the proceedings, Gradient's allegations are sufficient to defeat Jacobs' motion.

**III. Conversion**

The common law tort of conversion is defined in Minnesota as "an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'" DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997) (quoting Larson v. Archer–Daniels Midland Co., 32 N.W.2d 649, 650 (1948)). "The tort of conversion applies where

interference with the plaintiff's property is so serious as to justify the forced judicial sale of the property to the defendant." Bloom v. Hennepin Cty., 783 F. Supp. 418, 441 (D. Minn. 1992). Conversion may involve "tangible property, or intangible property customarily merged in, or identified with some document."[2] Id. To adequately plead a conversion claim, Gradient must allege that it holds a valid interest in the property and that Jacobs has deprived it of that interest. Williamson v. Prasciunas, 661 N.W.2d 645, 649 (Minn. Ct. App. 2003).

Gradient alleges that Jacobs misappropriated Gradient's confidential information by sending copies of that information to her personal e-mail account. Answer and Counterclaims ¶¶ 99-100. Jacobs argues that the court should dismiss the conversion claim because Gradient (1) has not alleged a cognizable property interest, and (2) is still able to use the information. The court agrees.

Under well-established Minnesota law, Gradient may not maintain a conversion claim based on Jacobs' alleged

---

[2] "[I]ntangible property customarily merged in, or identified with some document" includes the following: (1) documents in which intangible rights are merged (such as promissory notes, bank checks, bonds, and bills of lading); (2) tangible objects which are highly important to the exercise of an intangible right (such as bank savings books, insurance policies, tax receipts, and account books); and (3) rights without an accompanying conversion of something tangible (for example, a corporation's refusal to register a transfer of shareholder rights). Bloom, 783 F. Supp. at 440. Gradient does not argue that its information falls within any of those categories.

misappropriation of its intangible property interests.  See Minn. Life Ins. Co. v. AXA Inv. Mgr., No. 03-4383, 2005 WL 1475336, at *11 (D. Minn. June 22, 2005) (rejecting conversion claim, in part, because trade secrets do not qualify as property under Minnesota conversion law); Storage Tech. Corp. v. Cisco Sys., Inc., No. 00-2253, 2003 WL 22231544, at *4 (D. Minn. Sept. 25, 2003) ("Minnesota does not extend the tort of conversion to protect property interests in alleged trade secrets."); Bloom, 783 F. Supp. at 440-41 (declining to extend the tort of conversion to protect confidential and proprietary information, whether reduced to writing or not).

Gradient also fails to allege that it has been deprived of the use of its information.  See Mid-List Press v. Nora, 275 F. Supp. 2d 997, 1005 (D. Minn. 2003) (dismissing conversion claim because plaintiff still had possession and use of the trade secrets at issue); Bloom, 783 F. Supp. at 441 (concluding that defendants' copying and use of plaintiff's proprietary information was insufficient to establish deprivation required for conversion claim).  As a result, Gradient has not adequately pleaded its conversion claim.

Gradient's conversion claim also must be dismissed because the facts on which it is based are identical to the facts underlying the misappropriation claim.  The MUTSA "displace[s] conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."  Minn. Stat.

§ 325C.07(a)[3]; see also Mayo Clinic v. Elkin, No. 09-322, 2010 WL 760728, at *5 n.13 (D. Minn. Mar. 4, 2010) (internal quotation marks omitted) ("Under the MUTSA's displacement provision, a plaintiff may only maintain separate causes of action to the extent that the causes of action have more to their factual allegations than the mere misuse or misappropriation of trade secrets."); SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC, 292 F. Supp. 2d 1173, 1179-80 (D. Minn. 2003) (dismissing conversion claim under § 325C.07(a) because the alleged conversion was "nothing more than misappropriation of trade secrets").

## CONCLUSION

Accordingly, based on above, **IT IS HEREBY ORDERED** that the motion to dismiss counterclaims [ECF No. 14] is granted in part as set forth above.

Dated:  March 25, 2016.

s/David S. Doty
David S. Doty, Judge
United States District Court

---

[3] The MUTSA does not displace "contractual remedies, whether or not based upon misappropriation of a trade secret" and thus does not affect Gradient's breach-of-contract claim. Minn. Stat. § 325C.07(b)(1).